426 P.2d 586

**GOODPASTURE GRAIN & MILLING CO., Inc., a corporation, Plaintiff-Appellee,**

**v.**

**James BUCK, Defendant-Appellant, Kenneth Aldridge, d/b/a Artesia Milling Company, a partnership, Defendant-Appellee.**

**No. 8211.**

Supreme Court of New Mexico.

April 17, 1967.

Watson & Watson, Artesia, for appellant.

William F. Brainerd, Roswell, for appellee.

## OPINION

COMPTON, Justice.

Goodpasture Grain & Milling Co., Inc., brought this action against defendants James Buck and Kenneth Aldridge to recover on account. The complaint alleges that the defendants were partners doing business as Artesia Milling Company. Defendant Buck denied that a partnership ever existed and claimed that the account sued on was solely the debt of defendant Aldridge. Aldridge admitted the existence of the partnership, but pleaded his adjudication as a bankrupt as a bar to the action. The case was tried to the court and, from a judgment in favor of the plaintiff and against the defendants, jointly and severally, the defendant Buck has appealed.

The trial court specifically found that the defendants were partners engaged in business under the partnership name of Artesia Milling Company from the inception of the company in early 1960 until the business was closed in 1964, and that the partnership business was limited to the operation of a *hay mill;* that the company expanded its business in 1962 to include the distribution of fertilizers and insecticides; and that the partnership opened an account with the plaintiff for the purchase of fertilizers and insecticides and certain dis-

tribution equipment. The unpaid balance of this account is the subject matter of this action.

The appellant contends (a) that the court erred in admitting parol evidence which contradicted the terms of a written lease showing the status of the parties as that of lessor and lessee, and (b) that the evidence was insufficient to establish a partnership in fact. Both contentions are found without merit.

The written lease was signed by both defendants sometime after they had begun milling operations. By its terms, Buck purported to lease to Aldridge space in Buck's barn along with all milling equipment "used in connection with a hay mill located therein." In return, Buck was to receive as rent ⅓rd net profits "derived from the operation of said hay mill." The lease was to run for a period beginning August 1, 1960 and ending July 31, 1962.

The court permitted Aldridge to testify that he and Buck were partners in the company from its inception and that the lease agreement was entered into at the request of the appellant solely to protect him against liability caused by an injury to an employee while operating the equipment; that defendant Aldridge devoted his entire time to managing the mill; that Buck provided the financing and devoted only a portion of his time to the mill; that Aldridge was to receive ⅔rds of the net profits and

that Buck would receive the remaining ⅓rd.

Concerning the written lease, the court further found:

"7. That sometime after the partnership began its business, the defendant Buck approached the defendant Aldridge with a certain Lease Agreement covering the mill and equipment operated by the partnership. The Lease was signed by the defendant Aldridge after being advised by the defendant Buck that the Lease was for the protection of Buck and solely to prevent liability on the part of the defendant Buck in the event of an injury to some employee while operating the equipment. That the parties did not intend that the Lease Agreement would have any effect on the business or their relationship as partners. No operations were conducted under the Lease Agreement, said Agreement being actually treated by the partners as non-existent."

The admission of the testimony was proper. Parol evidence is admissible to show that a contract was never entered into, or, if entered into, was executed as a sham. See Halliburton Company v. McPheron, 70 N.M. 403, 374 P.2d 286; 3 Corbin, Contracts, § 577; 6A Corbin, Contracts, § 1473; and Anno. 71 A.L.R.2d 382; and compare Wester v. Trailmobile Company, 59 N.M. 73, 279 P.2d 526. The

parol evidence rule is not applicable to this case because Aldridge denied that he assented to the lease, and, in fact, testified that the lease was intended as a subterfuge and not a contract of partnership. The parol evidence was designed to prove the partnership, not to vary the terms of the lease.

As to the sufficiency of the evidence to establish a partnership relationship, Aldridge testified concerning the filing of partnership income tax returns, and there is evidence that Buck was aware that partnership returns were so filed. Buck's personal income tax returns for years corresponding to the partnership returns show that one year Buck claimed a loss attributed to the partnership equal to ⅓rd of the partnership income. Buck signed a consignment contract in which Artesia Milling Company is identified as "A Partnership," and in which each defendant is identified in the documents as a "Gen'l Partner." Buck's signature, along with Aldridge's, appears on various financial documents executed on behalf of the Artesia Milling Company. It was also shown that Buck had exercised some control over the company bank account. The evidence is deemed substantial and adequately supports the finding of the existence of the partnership.

Buck attempted to explain away much of the above recited evidence. He claimed he did not know the contents of his personal income tax returns, and that his signature had been forged on at least one of the documents. It is obvious that the trial court was not persuaded by his explanations. We have repeatedly said that this court does not weigh conflicting evidence, and that findings supported by substantial evidence will not be disturbed. Hummer v. Betenbough, 75 N.M. 274, 404 P.2d 110.

The judgment should be affirmed, and it is so ordered.

CARMODY, J., and OMAN, J., Court of Appeals, concur.